IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CORY FIRZLAFF, an individual,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>WM. H. REILLY & CO., an Oregon corporation,<br><br>　　　　　Defendant. | **ORDER DENYING [41] PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING [44] PLAINTIFF'S MOTION TO STRIKE REILLY'S NON-RETAINED EXPERT DISCLOSURE OR ALTERNATIVELY, MOTION IN LIMINE**<br><br>Case No. 2:18-cv-00915-DBB-DAO<br><br>District Judge David Barlow |

This matter is before the court on Plaintiff's Motion for Partial Summary Judgment[1] (Motion for Partial Summary Judgment) and Plaintiff's Motion to Strike Reilly's Non-Retained Expert Disclosure or, Alternatively, Motion in Limine[2] (Motion to Strike). Having reviewed the parties' briefing, the court concludes the motions may be resolved without oral argument.[3]

## BACKGROUND

*The Parties*

Plaintiff Cory Firzlaff is an individual who formerly worked as a commissioned salesperson for Defendant William H. Reilly & Company (Reilly).[4] Reilly is a manufacturer

---

[1] Plaintiff's Motion for Summary Judgment (Motion for Partial Summary Judgment), ECF No. 41, filed May 1, 2020.

[2] Plaintiff's Motion to Strike Reilly's Non-Retained Expert Disclosure or, Alternatively, Motion in Limine (Motion to Strike), ECF No. 44, filed May 15, 2020.

[3] *See* DUCivR 7-1(f).

[4] Motion for Partial Summary Judgment at ¶ 2.

representative for companies that produce equipment used in the wastewater and water treatment industry.[5] Bill Reilly is a co-owner and the Chief Executive Officer of Reilly.[6] His brother, Mike Reilly, is also a co-owner and is the Chief Operating Officer of Reilly.[7]

The employment agreement between Firzlaff and Reilly provided that Reilly was to pay Firzlaff his commissions and reimburse his approved business expenses.[8] Beginning in approximately 2012, Reilly failed to pay Firzlaff his commissions.[9] Over the course of the next few years, the commissions Reilly owed to Firzlaff accumulated.[10] In 2017, Firzlaff informed Reilly that he intended to leave the company.[11] In an effort to accommodate Firzlaff's departure from Reilly and control the message to Reilly's clients, Firzlaff and Mike Reilly and Bill Reilly engaged in communications about what Firzlaff's separation would look like and what they would say to Reilly's clients.[12]

*The Separation Communications*

On June 23, 2017, Firzlaff emailed Mike Reilly and Bill Reilly stating that his "lawyer [was] working on the agreement wording" and proposing what the parties would say if asked about Firzlaff's departure.[13] His proposed letter stated,

---

[5] Motion for Partial Summary Judgment at ¶ 3; Wm. H. Reilly's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (Opposition) at 3, ECF No. 52, filed June 12, 2020.

[6] Opposition at 4.

[7] *Id.* at 4.

[8] Motion for Partial Summary Judgment at ¶ 5; Opposition at 9.

[9] Motion for Partial Summary Judgment at ¶ 6; Opposition at 9.

[10] Motion for Partial Summary Judgment at ¶¶ 6–8; Opposition at 9–10.

[11] Motion for Partial Summary Judgment at ¶ 10; Opposition at 10–11.

[12] Motion for Partial Summary Judgment at ¶¶ 12–25; Opposition at 12–23.

[13] Motion for Partial Summary Judgment Exhibit 4.

> Dear Principle,
>
> Cory Firzlaff is leaving the employ of William H. Reilly and with this letter effective today we are immediately cancelling our Representation of your equipment with no grace period and with no protection on any jobs or potential Purchase Orders that may be the fruit of Cory's past work in the states of Utah, Idaho, Montana, and Wyoming.
>
> If we have any active Purchase Order's or commission payments in these states a separate letter will be sent regarding the disposition of those funds.
>
> Cory will be starting his own company will be contacting you regarding his status.
>
> Thank you.
>
> WHR[14]

Firzlaff's email also stated that if Reilly's clients asked "what happened" Firzlaff and the Reillys would say,

> Well, we just worked out a mutually beneficial separation that is good for all of us and it will allow Cory to accomplish the goal of significantly increasing the Sale of your equipment in the IM region and I'm sure you agree that is simply terrific.[15]

During a phone call that same day between the Reillys and Firzlaff, Bill Reilly stated to Firzlaff,

> All right. Let's back up a sec. You know, you're putting a lot of words in our mouth and stuff that we would never say, but what—what—what Mike and I want to tell people is that you want to grow the territory, you've made us an offer to buy out, we've agreed on a buyout, and you're going to buy us out and assume the territory, and it's all very positive, and that's what we want to tell people, and I don't know why we need to tell them anything else.[16]

---

[14] *Id.*

[15] *Id.*

[16] *Id.* Exhibit 5 at 3:15–3:21.

3

Firzlaff responded, "No that's—like I said in that—in that letter, I'm just going to say we—we've got a mutually agreeable plan. I mean—and Cory's going to try and grow the territory. Right. No, I agree a hundred—that's kind of what I wrote in that—."[17]

During his deposition, Bill Reilly testified that at the end of the phone call[18] he, Mike Reilly, and Firzlaff "had an understanding that we were moving forward with [Firzlaff] separating, and that [Reilly] would make an offer on what that meant going forward."[19] When asked if it would be fair to say that "there was no agreement other than an understanding to work toward one," Bill Reilly responded, "Right."[20]

On June 29, 2017, Firzlaff emailed Mike and Bill Reilly with a subject line of "Contract rewrites – Territory Transfer," inquiring about a "schedule of calls," apparently with Reilly clients.[21] On June 30, 2017, Firzlaff emailed one of Reilly's principals stating at the outset, "I have negotiated a good buyout of my territory from WHR."[22]

On July 1, 2017, Bill Reilly emailed Firzlaff with the calculations of the balance Reilly owed to Firzlaff and the value of the territory that Firzlaff would be "buying."[23] Bill Reilly provided, "In order to buy the territory, we need to look at not just the money coming in from your projects but also the value of the territory. You are owed $321,789 less the value of the

---

[17] *Id.* at 3:22–4:2.

[18] It is disputed whether this phone call is the June 23, 2017 phone call or a prior call. *See* Opposition at 15 (citing Opposition Exhibit 2 at 133:19–134:3).

[19] Motion for Partial Summary Judgment Exhibit 3 at 136:20–136:25.

[20] *Id.* at 137:1–137:4.

[21] Opposition Exhibit 6.

[22] Motion for Partial Summary Judgment Exhibit 6.

[23] *Id.* Exhibit 7.

territory that you are buying."[24] Bill Reilly concluded that the value of the territory was $170,272.[25] He calculated that the $321,789 less the $170,272 equaled $151,517.[26] He then stated that he and Mike Reilly would "offer to decrease the value of the territory by $10,000 which [would] increase the balance due to [Firzlaff] to $161,517."[27] Bill Reilly then outlined that the cash flow to Firzlaff would be $130,978 based on outstanding "buy/sell and commissions," and that the cash flow combined with the $161,517 would total $292,495.[28] He stated that based on the "multiplier," Firzlaff would "[b]asically" buy the territory for $29,000.[29] Bill Reilly then wrote that he and Mike Reilly hoped that Firzlaff would "agree" and that they had not seen Firzlaff's "proposed agreement yet but if it [was] a simple agreement that use[d] the numbers outlined" by Bill Reilly in this email, then they would "be on the same page."[30] He concluded, "Our mutual goal should be to finalize this as soon as possible. July 15th, if not sooner, seems doable."[31]

Firzlaff did not respond to this email.[32] Between the July 1, 2017 email and the filing of the lawsuit, the Reillys and Firzlaff exchanged other emails discussing the status of informing Reilly's clients about the change with the territory.[33] During that same time period, Reilly sent

---

[24] *Id.*

[25] *Id.*

[26] Motion for Partial Summary Judgment Exhibit 7.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *See* Motion for Partial Summary Judgment Exhibit 8.

[33] Opposition at 20 (citing Opposition Exhibits 8–9).

5

emails to multiple clients, with a cc: to Firzlaff, referencing an agreement regarding certain territory involving Firzlaff and asking the client to transfer their agreement to Firzlaff.[34] Firzlaff also sent at least one email to a Reilly client indicating that the intermountain territory had been released by Reilly to him.[35]

The parties disagree about whether these communications resulted in an agreement between the parties that Firzlaff would buy the territory and thus what Reilly owes to Firzlaff.[36]

*The Motion to Strike*

On February 28, 2020, Plaintiff Cory Firzlaff received Reilly's Non-Retained Expert Disclosure.[37] This disclosure designated Mike and Bill Reilly as non-retained experts and for each of them provided the following disclosure of topics to which they may testify:

> Mr. Reilly may offer testimony regarding the water treatment and wastewater treatment industry. More specifically, Mr. Reilly is expected to testify regarding the relationship between manufacturers in the industry and the manufacturers' representative companies/firms. Mr. Reilly is also expected to testify regarding the sale or transfer of territories by manufacturers' rep firms in the industry. Mr. Reilly is also expected to testify regarding the measures companies like Reilly take when a salesperson leaves the company to protect its interest in projects the salesperson started working on while still at the company. Mr. Reilly may also testify regarding how two different manufacturers' rep firms in the industry can work on the same project and not be competing against each other.[38]

Firzlaff requests that the court strike Reilly's disclosure or otherwise prohibit the Reillys' testimony.[39]

---

[34] *Id.* Exhibits 14–15, 19–20.

[35] *Id.* Exhibit 12.

[36] *See* Motion for Summary Judgment at ¶¶ 26–29.

[37] Motion to Strike at 1.

[38] *Id.* Exhibit A.

[39] *Id.* at 2–3.

## STANDARD

*Motion to Strike Non-Retained Expert Witness Disclosure*

Federal Rule of Civil Procedure 26(a)(2)(C) regarding non-retained expert witnesses requires a disclosure that states "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." These requirements are "relatively minimal," however, they serve to effectively obviate the danger of unfair surprise.[40]

*Motion for Summary Judgment*

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[42] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[43] The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[44]

---

[40] *Marland v. Asplundh Tree Expert Co.*, No. 1:14-cv-40, 2017 WL 477726 at *1 (D. Utah Feb. 3, 2017).

[41] Fed. R. Civ. P. 56(a).

[42] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[43] *Id.*

[44] *Id.* at 670–71.

## ANALYSIS

### A. Motion to Strike

Firzlaff moves the court to strike Reilly's disclosure designating its principals as non-retained experts or, alternatively, to preclude Reilly's principals from rendering expert opinion on topics other than their general knowledge of wastewater treatment and the wastewater treatment industry.[45]

Federal Rule of Civil Procedure 26(a)(2)(C) regarding non-retained expert witnesses requires a disclosure that states "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." These requirements are "relatively minimal," however, they serve to effectively obviate the danger of unfair surprise.[46]

Here, the designation is the same for both Bill Reilly and Mike Reilly and states:

> Mr. Reilly may offer testimony regarding the water treatment and wastewater treatment industry. More specifically, Mr. Reilly is expected to testify regarding the relationship between manufacturers in the industry and the manufacturers' representative companies/firms. Mr. Reilly is also expected to testify regarding the sale or transfer of territories by manufacturers' rep firms in the industry. Mr. Reilly is also expected to testify regarding the measures companies like Reilly take when a salesperson leaves the company to protect its interest in projects the salesperson started working on while still at the company. Mr. Reilly may also testify regarding how two different manufacturers' rep firms in the industry can work on the same project and not be competing against each other.[47]

---

[45] Motion to Strike at 1.

[46] *Marland*, 2017 WL 477726, at *1.

[47] Motion to Strike Exhibit A.

Defendant contends that the designation meets these requirements because it is a "brief account that states the main points and effectively obviates the danger of unfair surprise."[48] Defendant does not elaborate on this contention or explain how the designation obviates the danger of unfair surprise. The designation is insufficient pursuant to Rule 26(a)(2)(C) because it merely recites the topics to which the Reillys may testify, but it does not provide the required summary of the facts or opinions to which the Reillys may testify.[49] It thus does not serve to obviate the danger of unfair surprise for Plaintiff. Therefore, the court strikes Defendant's designation.

Importantly, to resolve the Motion for Partial Summary Judgment, the court relied on only the information submitted in support of the parties' briefing and did not consider any of the Reillys' testimony to be non-retained expert witness testimony.

### B. Motion for Partial Summary Judgment

Firzlaff argues that he is entitled to summary judgment on the issue of whether a sale of the territory occurred.[50] To establish that there was a sale, Reilly would need to establish that the parties entered into an agreement, in other words a contract, for Reilly to sell the territory to Firzlaff. "Generally, formation of a contract requires an offer, an acceptance, and consideration."[51]

---

[48] Wm. H. Reilly & Co.'s Memorandum in Opposition to Firzlaff's Motion to Strike Reilly's Non-Retained Expert Disclosure or, Alternatively, Motion in Limine at 6–7, ECF No. 51, filed June 5, 2020 (quoting *Marland*, 2017 WL 477726).

[49] *See Kirkbride v. Terex USA, LLC*, No. 2:10-cv-660, 2013 WL 4854455, at *1 (D. Utah Sept. 11, 2013) (prohibiting expert witness testimony pursuant to Federal Rule of Civil Procedure 26(a)(2)(C) because the statement did not include a summary of the facts and opinions to which the expert would testify).

[50] Motion for Partial Summary Judgment at 12–15.

[51] *Cea v. Hoffman*, 2012 UT App 101, ¶ 24.

      *a. Offer*

The court first addresses whether there is a dispute of material fact regarding any offer made for the sale of the territory. "An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it."[52] "For an offer to be one that would create a valid and binding contract, its terms must be definite and unambiguous."[53]

Firzlaff contends that the July 1, 2017 email from Reilly constituted Reilly's offer and that there is no evidence to suggest that the offer was ever accepted—rather there is only Reilly's "desire to impose an involuntary sale to Firzlaff on terms, such as purchase price, that Reilly unilaterally determines."[54]

For its part, Reilly argues that the agreement, which would include the offer, between Reilly and Firzlaff occurred prior to July 1, 2017 and that the July 1, 2017 email merely summarized Reilly's position on the value of the territory.[55] In support of this position, Reilly points the court to the June 23, 2017 phone call in which Bill Reilly stated,

> All right. Let's back up a sec. You know, you're putting a lot of words in our mouth and stuff that we would never say, but what—what—what Mike and I want to tell people is that you want to grow the territory, you've made us an offer to buy out, we've agreed on a buyout, and you're going to buy us out and assume the territory, and it's all very positive, and that's what we want to tell people, and I don't know why we need to tell them anything else.[56]

---

[52] *Id.*

[53] *DCM Inv. Corp. v. Pinecrest Inv. Co.*, 2001 UT 91, ¶ 12.

[54] Motion for Partial Summary Judgment at 12–13.

[55] Opposition at 36.

[56] Motion for Partial Summary Judgment Exhibit 5 at 3:15–3:21.

Reilly then contends that Firzlaff "agreed 100%"[57] that he was buying the territory.[58]

Firzlaff replies that his agreement in this phone call was solely related to the Reillys' "demand as to what to tell people" about Firzlaff leaving Reilly.[59]

The parties point the court to other evidence in support of their respective positions about whether there was an agreement for the sale of the territory. Firzlaff contends that the June 30, 2017 email is not evidence of an agreement because it was a result of Firzlaff complying with Reilly's desire to craft a narrative to tell their clients and because the email did not mention any terms, specifically it did not mention a price term.[60]

Reilly contends that Firzlaff then followed up with a June 29, 2017 email to address the transfer of the territory and how to discuss transfer with Reilly's clients.[61] Reilly notes that in this email Firzlaff referred to "papers" that his lawyer was drafting.[62] In support of its argument, Reilly also looks to Firzlaff's June 30, 2017 email to one of Reilly's principals in which Firzlaff states, "I have negotiated a good buyout of my territory from WHR."[63]

The court views the facts here and "draw[s] all reasonable inferences therefrom most favorably to the nonmovant."[64] A factual dispute is genuine when "there is sufficient evidence

---

[57] It is worth noting that the transcript of the phone conversation indicates that Firzlaff said "agreed one hundred," but did not say the word "percent." *See* MSJ Exhibit 5 at 4:1.

[58] Opposition at 36 (citing MSJ Exhibit 5 at 3:12–4:2, 6:11–6:16).

[59] Plaintiff's Reply in Further Support of Motion for Partial Summary Judgment at 5, ECF No. 56, filed July 17, 2020.

[60] Motion for Partial Summary Judgment at 14.

[61] Opposition at 36.

[62] *Id.*

[63] *Id.* (quoting Motion for Summary Judgment Exhibit 6).

[64] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

on each side so that a rational trier of fact could resolve the issue either way."[65] Here, each side has presented sufficient evidence that a rational fact-finder could resolve the issue of whether an offer was made either way. Thus, the resolution of this issue "is for the ultimate finder of fact—not the court on summary judgment."[66]

      b. *Acceptance*

The court next addresses the parties' arguments about whether there was an acceptance of an offer. "An acceptance must unconditionally assent to all material terms presented in the offer, including price and method of performance, or it is a rejection of the offer."[67]

As described above, Firzlaff's position is that the July 1, 2017 email was an offer. He argues that the July 1, 2017 offer was never accepted.[68] He further argues that there was no acceptance because there was never an agreed upon price term and no sales document exists.[69]

For its part, Reilly argues that "Firzlaff's silence on the price term coupled with his acceptance of the benefits of Reilly's efforts (*i.e.*, Bill Jr. and Mike persuading Reilly's principals to use Firzlaff as their sales representative in the IM Territory and Reilly's exit from the IM Territory) operates as Firzlaff's acceptance of Reilly's price for the territory."[70] Reilly contends that the parties had agreed upon a price term—the $160,272 figure that Bill Reilly

---

[65] *Id.*

[66] *SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201, 1215 (10th Cir. 2009).

[67] *Cal Wadsworth Const. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995).

[68] Motion for Summary Judgment at 12–13.

[69] *Id.* at 13.

[70] Opposition at 37 (citing *Concur-Texas, LP v. Duradril, LLC*, No. 2:14-cv-00218, 2016 WL 2596028, at *5 (D. Utah May 5, 2016)).

calculated in his July 1, 2017 email.[71] Reilly also contends that even if there was no agreement on the price term, a missing price term would not necessarily prevent their contract from being formed or enforceable.[72]

Under certain circumstances, a party's silence may indicate acceptance of an offer.[73] One example includes where "an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation."[74] Also, the actions of both parties may be relevant to whether the parties entered into an agreement.[75]

As with the evidence the parties presented in support of their respective arguments about whether there was an offer, here, the evidence cited above is sufficient for a rational fact-finder to find either way on the issue of whether there was acceptance of an offer. Accordingly, the resolution of this issue "is for the ultimate finder of fact—not the court on summary judgment."[76]

   c. *Consideration*

"Consideration is present when there is an act or promise given in exchange for the other party's promise."[77] Firzlaff, the moving party, does not directly address any lack of consideration, focusing instead on the issues of offer and acceptance. The record contains

---

[71] *Id.*

[72] *Id.* (citing *I-D Elec. Inc. v. Gillman*, 2017 UT App 144, ¶ 27).

[73] *See Ewell & Son, Inc. v. Salt Lake City Corp.*, 493 P.2d 1283, 1286 (Utah 1972); *see also Concur-Texas, LP v. Duradril, LLC*, No. 2:14-cv-00218, 2016 WL 2596028, at *5 (D. Utah May 5, 2016).

[74] Restatement (Second) of Contracts § 69(a) (1981).

[75] *Concur-Texas, LP*, 2016 WL 2596028, at *5 (citation omitted).

[76] *SCO Group, Inc*, 578 F.3d at 1215.

[77] *Healthcare Servs. Group, Inc. v. Utah Dep't of Health*, 2002 UT 5, ¶ 17.

evidence that would permit a rational factfinder to determine that consideration was present, namely, that Reilly would cede certain sales territory and attempt to transfer certain business relationships to Firzlaff in exchange for a reduction in the amount it owed Firzlaff.[78] Accordingly, the court cannot decide this issue in favor of Firzlaff on summary judgment.

## CONCLUSION

Firzlaff has failed to demonstrate that there is no genuine issue of material fact on the question of whether there was an agreement relevant to the parties' dispute. Thus, the issue cannot be resolved on summary judgment. Plaintiff's Motion for Partial Summary Judgment is DENIED.

Signed February 23, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[78] *See, e.g.*, Motion for Partial Summary Judgment Exhibits 6–8, 12, 14–15, 19–20.